1  Allen R. Vaught (admitted *pro hac vice*)
   BARON & BUDD, P.C.
2  3102 Oak Lawn Avenue, Suite 1100
   Dallas, TX 75219
3  Telephone:  (214) 521-3605
   Facsimile:   (214) 520-1181
4  E-Mail: avaught@baronbudd.com

5  Kelly M. Dermody (Cal. Bar No. 171716)
   Jahan C. Sagafi (Cal. Bar No. 224887)
6  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
7  San Francisco, CA 94111-3339
   Telephone:  (415) 956-1000
8  Facsimile:   (415) 956-1008
   E-Mail: kdermody@lchb.com
9  E-Mail: jsagafi@lchb.com

10  *Attorneys for Plaintiffs and proposed Class members*

11

12                UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA

13

14  THOMAS ZABOROWSKI, VANESSA            Case No. 12-CV-05109-SI
    BALDINI, KIM DALE, and NANCY
15  PADDOCK, on behalf of themselves, and
    all others similarly situated,        **FIRST AMENDED COMPLAINT FOR
16                                         VIOLATIONS OF FLSA AND STATE
                      Plaintiffs,          WAGE AND HOUR LAWS**
17
          v.                              **COLLECTIVE ACTION**
18
    MHN GOVERNMENT SERVICES, INC.         **CLASS ACTION**
19  and MANAGED HEALTH NETWORK,
    INC.,                                 **DEMAND FOR JURY TRIAL**
20
                      Defendants.
21

22

23

24

25

26

27

28

1    Plaintiffs Thomas Zaborowski, Vanessa Baldini, Kim Dale, and Nancy Paddock

2    (collectively, "Plaintiffs") allege, on behalf of themselves and classes of those similarly situated,

3    as follows:

4    **JURISDICTION AND VENUE**

5    1.    This Court has federal question jurisdiction over this action pursuant to

6    28 U.S.C. § 1331 and section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

7    § 216(b).

8    2.    Furthermore, this Court has federal question jurisdiction over Plaintiffs'

9    declaratory judgment action brought pursuant to 28 U.S.C. § 2201.  Plaintiffs' declaratory

10   judgment action involves adjudication of federal issues, because the arbitration agreement at issue

11   seeks to impair, and has the practical effect of impairing, the MFLCs' substantive and procedural

12   rights under the FLSA.

13   3.    This Court also has original jurisdiction over this action under the Class

14   Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) there are

15   100 or more members in the proposed class; (2) at least some members of the proposed class have

16   a different citizenship from Defendant; and (3) the claims of the proposed class members exceed

17   $5,000,000 in the aggregate.

18   4.    In addition, this Court has supplemental jurisdiction under 28 U.S.C.

19   § 1367 over Plaintiff's state wage and hour law claims because those claims derive from a

20   common nucleus of operative fact.

21   5.    This Court is empowered to issue a declaratory judgment pursuant to

22   28 U.S.C. §§ 2201 and 2202.

23   6.    The United States District Court for the Northern District of California has

24   personal jurisdiction over MHN Government Services, Inc. ("MHNGS") and Managed Health

25   Network, Inc. ("MHN, Inc.") (collectively, "MHN" or "Defendants"), because both MHN entities

26   are headquartered in this District, do business in California and in this District, and because many

27   of the acts complained of and giving rise to the claims alleged occurred in and emanated from this

28   District.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

8.      Intradistrict assignment:  Pursuant to N.D. Cal. Local Rule 3-2(c) and (e), intradistrict assignment to the San Francisco Division is proper because a substantial part of the events that give rise to the claims asserted occurred in Marin County.

<u>SUMMARY OF CLAIMS</u>

9.      Plaintiffs performed work for MHN as Military and Family Life Consultants ("MFLCs") while classified by MHN as independent contractors.  MFLCs have the primary duty of serving as routers of information for servicemembers at the military bases to which they are assigned.  (MHN contracts with the federal government to provide health care services to servicemembers at those bases.)

10.      MHN has unlawfully classified all MFLCs nationwide as independent contractors, despite the fact that they should have been classified as nonexempt employees.  The MFLCs satisfied all applicable legal tests for employment status.  In addition, MHN cannot bear its burden of showing that MFLCs fit within one of the narrow exemptions to the FLSA or applicable state wage and hour law.  Therefore, the MFLCs are entitled to overtime pay for all overtime hours worked, as well as additional remedies available under applicable law.

11.      MHN has willfully refused to pay the MFLCs the required overtime compensation for overtime hours worked, and has failed to keep legally required time records.

12.      MHN's practices violate the FLSA and the state laws pled herein. Plaintiffs seek declaratory relief; overtime compensation for all overtime work required, suffered, or permitted by MHN; liquidated and/or other damages and penalties as permitted by applicable law; benefits recoverable under applicable law and interest; and attorneys' fees and costs. Plaintiffs also seek declaratory relief regarding the unconscionability and inapplicability of MHN's arbitration agreement.

13.      On information and belief, since the filing of the initial complaint in this action, MHN has reclassified or is in the process of reclassifying all MFLCs from independent contractor status to employee status.

- 2 -

## SUMMARY OF COLLECTIVE AND CLASS ACTION ALLEGATIONS

14.     Plaintiffs bring this action on behalf of themselves and all persons who have worked for MHN in any location covered by the FLSA[1] as MFLCs (the "Class Positions"), at any time within the three years prior to the filing of the initial Complaint through the date of the final disposition of this action (the "Nationwide FLSA Period").  This group is hereinafter referred to as the "Nationwide FLSA Plaintiffs."

15.     Plaintiff Vanessa Baldini ("the California Named Plaintiff") also bring this action on behalf of all persons who have worked for MHN in California in the Class Positions ("the California Class"), at any time within the four years prior to the date of the filing of this First Amended Complaint through the date of the final disposition of this action (the "California Class Period").

16.     Plaintiff Nancy Paddock ("the Hawaii Named Plaintiff") also brings this action on behalf of all persons who have worked for MHN in Hawaii in the Class Positions ("the Hawaii Class"), at any time within the six years prior to the date of the filing of this First Amended Complaint through the date of the final disposition of this action (the "Hawaii Class Period").

17.     Plaintiffs Kim Dale and Nancy Paddock ("the Kentucky Named Plaintiffs") also bring this action on behalf of all persons who have worked for MHN in Kentucky in the Class Positions ("the Kentucky Class"), at any time within the five years prior to the date of the filing of this First Amended Complaint through the date of the final disposition of this action (the "Kentucky Class Period").

18.     Plaintiffs Zaborowski ("the Nevada Named Plaintiff") also brings this action on behalf of all persons who have worked for MHN in Nevada in the Class Positions ("the Nevada Class"), at any time within the two years prior to the date of the filing of this First Amended Complaint through the date of the final disposition of this action (the "Nevada Class Period").

---

[1] The FLSA covers work performed in the fifty states, Washington, D.C., Guam, and other locations.  29 U.S.C. § 213(f).

19.     The California, Hawaii, Kentucky, and Nevada Classes are hereinafter referred to as the "State Law Classes."

### THE PARTIES

I.     **Plaintiffs**

    A.     **Thomas Zaborowski**

20.     Plaintiff Thomas Zaborowski has worked for MHN as an MFLC from approximately November 2010 to September 2012.

21.     Specifically, he has worked for MHN as an MFLC during the following time periods:

    a.     From November 2010 to November 2011, he worked in Fort Riley, Kansas.

    b.     From February to May 2012, he worked at Nellis Air Force Base, Nevada.

    c.     From June to September 2012, he worked at Creech Air Force Base, Nevada.

22.     Mr. Zaborowski consents to sue for violations of the FLSA, pursuant to 29 U.S.C. §§ 216(b) and 256.  His consent to join form is attached hereto as part of Exhibit B.

    B.     **Vanessa Baldini**

23.     Plaintiff Vanessa Baldini has worked for MHN as an MFLC from approximately May 2009 to the present.

24.     Specifically, she has worked for MHN as an MFLC during the following time periods:

    a.     From approximately May to June 2009, she worked in Kileen, Texas.

    b.     From approximately June 2009 to September 2009, she worked in Yorktown, Virginia.

    c.     From approximately October 2009 to January 2010, she worked in Las Vegas, Nevada.

1          d.      From approximately April to May 2010, she worked in Leemore,

2   California.

3          e.      From approximately October 2010 to April 2011, she worked in

4   Fort Riley, Kansas.

5          f.      At other times during the period May 2009 to June 2011, she

6   worked overseas.

7          g.      From June 2011 to the present, she has remained active in MHN's

8   system, but has not performed work for MHN.

9       25.     Ms. Baldini consents to sue for violations of the FLSA, pursuant to

10  29 U.S.C. §§ 216(b) and 256.  Her consent to join form is attached hereto as part of Exhibit B.

11  **C.    <u>Kim Dale</u>**

12      26.     Plaintiff Kim Dale worked for MHN as an MFLC from April 2009 to

13  October 2012.

14      27.     Specifically, she has worked for MHN as an MFLC during the following

15  time periods:

16         a.      From approximately April to May 2009, she worked in Ft.

17  Campbell, Kentucky.

18         b.      From approximately June to August 2009, she worked in Indian

19  Head, Maryland.

20         c.      From approximately August to December 2009, she worked in San

21  Antonio, Texas.

22         d.      From approximately January to May 2010, she worked in

23  Clarksville, Tennessee.

24         e.      From approximately August to December 2010, she worked in Ft.

25  Campbell, Kentucky.

26         f.      From approximately January to May 2011, she worked in

27  Clarksville, Tennessee.

28

1       g.      From approximately January to May 2012 and August to October

2   2012, she worked in Ft. Campbell, Kentucky.

3           28.      Ms. Dale consents to sue for violations of the FLSA, pursuant to 29 U.S.C.

4   §§ 216(b) and 256.  Her consent to join form is attached hereto as part of Exhibit B.

5       **D.      Nancy Paddock**

6           29.      Plaintiff Nancy Paddock worked for MHN as an MFLC from October 2007

7   to October 2012.

8           30.      Specifically, she worked for MHN as an MFLC during the following time

9   periods:

10      a.      From approximately October 2007 to February 2008, she worked in

11  Ft. Campbell, Kentucky.

12      b.      From approximately March to April 2010, she worked in

13  Anchorage, Alaska.

14      c.      From approximately June to July 2010, she worked in Schofield

15  Barracks, Hawaii.

16      d.      From approximately November 2010 to May 2011, she worked in

17  Ft. Riley, Kansas.

18      e.      From approximately November 2011 to January 2012, she worked

19  in Lincoln, Nebraska and other cities in Nebraska.

20      f.      From approximately January to April 2012, she worked in Fort

21  Walton Beach, Florida.

22      g.      From approximately April to June 2012, she worked in Pensacola,

23  Florida.

24      h.      From approximately September to October 2012, she worked in El

25  Paso, Texas.

26          31.      Ms. Paddock consents to sue for violations of the FLSA, pursuant to

27  29 U.S.C. §§ 216(b) and 256.  Her consent to join form is attached hereto as part of Exhibit B.

28

**II.     Defendants (collectively, "MHN")**

     **A.     MHN Government Services, Inc. ("MHNGS")**

          32.     Defendant MHN Government Services, Inc. ("MHNGS") is a corporation incorporated under the laws of Delaware.

          33.     MHNGS's principal office and place of business is located at 2370 Kerner Boulevard, San Rafael, California.

          34.     MHNGS is a division of Managed Health Network, Inc. ("MHN, Inc.") *See* https://www.mhngs.com/app/aboutus/about_us.content (last visited Feb. 7, 2013).

     **B.     Managed Health Network, Inc. ("MHN, Inc.")**

          35.     MHN, Inc. is a corporation incorporated under the laws of California.

          36.     MHN, Inc.'s principal office and place of business is located at 2370 Kerner Boulevard, San Rafael, California.

          37.     According to its website, MHN, Inc. is a "Health Net company." *See* https://www.mhn.com/content/about-us (last visited Feb. 7, 2013).

          38.     The practices described herein were performed in and emanated from the San Rafael, California headquarters, and were performed at military bases, through CTOs that MHN entered into pursuant to its contracts with the U.S. government.

## FACTUAL BACKGROUND

**I.     MFLCs' Work**

     **A.     Generally**

          39.     Plaintiffs and all Class members have performed work for MHN as Military and Family Life Consultants ("MFLCs").  Throughout the relevant period, all MFLCs have consistently been misclassified by MHN as independent contractors.

          40.     MHN contracts with the United States Department of Defense to provide healthcare services at and around U.S. military bases.  The services provided by MFLCs are an integral part of the MHN's business because, without MFLCs, MHN could not satisfy its obligations under its contracts with the federal government.

41.     MHN controls MFLCs' work and limits their freedom and discretion through various mechanisms, including (a) policies set forth in documents (e.g., the MHN Provider Manual, the Provider Services Task Order Agreement, Consultant Task Orders ("CTOs"), and other requirements) and (b) close supervision by direct supervisors and other MHN managers.

**B.      MHN's Use Of CTOs To Set Forth MFLCs' Assignments**

42.     MHN hires MFLCs using agreements known as CTOs, which resemble orders issued by the United States Armed Forces.  CTOs identify the assignment location, assignment duration, amount of compensation, method of travel, lodging arrangements, and other details.

43.     Each CTO states that the MFLC is only to provide the limited services mandated by the Provider Services Task Order Agreement, which in turn incorporates MHN's MFLC Provider Manual.  Together, these documents place significant control over and restrictions on what MFLCs can and cannot do.

**C.      MFLCs' Job Duties**

44.     The Military and Family Life Consultant's primary duty, consistent with MHN's use of the term "Consultant," is to serve as a router of information for servicemembers at the military bases to which they are assigned.  According to MHN documents, MFLCs:

    a.      participate in "meetings or sessions,"

    b.      "promote the MFLC program and services," and

    c.      "deliver[] presentations (either psychoeducational presentations, or 'briefings' to describe the program to the population of the installation) or other types of outreach/promotion of the program."

45.     Another MHN document explains that MFLCs:

> [p]rovide short term, situational, problem solving non-medical counseling services in support of military personnel and their families at the location and for the time period specified [in the CTO] **in accordance with** the Provider Services Task Order Agreement executed between MHN and [MFLC] and **all requirements, policies and procedures** contained in the MFLC Provider Manual and the MFLC Quality Assurance Surveillance Program.  [Emphasis added.]

46.     As part of that work, MFLCs also routinely perform mundane tasks such as attending briefings, answering phones and serving as de facto receptionists.

47.     MHN provides standard materials for MFLCs to use in their work.  For example, the MHN Provider Manual states that "[MFLCs] use military and contractor approved presentations."  Moreover, MHN expressly forbids MFLCs from using their own presentations or handouts on assignment; materials must be approved by an MHN supervisor.

48.     Although MHN requires MFLCs to be psychologists, social workers, professional counselors, marriage family therapists, or registered nurses, it does not permit them to perform the functions traditionally associated with those jobs.  Specifically, the MHN Provider Manual states:

> **Consultants are not working as traditional therapists** and should not use clinical and diagnostic terminology.  **Further, because this is a consulting (rather than therapist) role, licensure in the state of assignment is not required**.  [Emphasis added.]

49.     Furthermore, a MHN program summary brochure describing the MFLC role explains:

> MFLCs provide informal support and outreach for Service Members and families.  MFLCs work exclusively with V-Codes; **they do not diagnose or treat mental disorders**.  (Mental disorders are referred to Military Mental Health resources or other **professional** resources.)  [Emphasis added.]

50.     MHN's "Program Summary" also provides that:

> **The consultants' role in this program is unique in that they are not working as traditional therapists.**  The stated primary MFLC role is to assess needs, provide support or refer to appropriate resources as necessary.  [Emphasis added.]

51.     MHN does not require MFLCs to be licensed to render services in the state in which they work.

52.     Thus, while many MFLCs might be considered "professionals" in their outside non-MHN occupations, their primary duty, based on the tasks and duties assigned them by MHN, is quite different.  MFLCs' primary duty does not involve work requiring advanced knowledge in a field of science or learning.

**D.     MHN's Standard Training And Testing**

53.     MFLCs are extensively trained and tested by MHN on how to do their jobs.

54.     The MHN Provider Manual explains:

MHNGS offers **comprehensive resources** to assure that all [MFLCs] filling assignments are fully prepared. Your **required training** will assist you in understanding your role and the parameters of MFLC Service delivery.  [Emphasis added.]

55.     The MHN Provider Manual also states:

Training required for all [MFLCs] includes critical program information, including **role definition**, **parameters of the program**, general information about military environments, MHNGS policies and procedures, **guidelines about specific situations**, and overall ins and outs of service delivery.  This section also includes **Presentation Skills training**, which will prepares [*sic*] [MFLCs] to deliver presentations--an **essential part** of the MFLC role.  [Emphasis added.]

56.     To ensure that MFLCs can comply with its policies and requirements, MHN requires MFLCs to attain minimum scores (such as 80%) on tests of their knowledge of various aspects of MHN policies and requirements.

**E.     MHN's Supervision And Control Over MFLCs**

57.     MHN closely supervises MFLCs.  Its "Program Summary" explains:  "All [MFLCs] work under the direction of an MHN clinical supervisor and a military point of contact (POC)."  The MHN Provider Manual reiterates this and adds:

The FSC Officer/A&FRC Director or other military POC will provide oversight to address **day-to-day duties** and scheduling issues.  The MHN supervisor provides **mandatory, weekly supervision** via telephone regarding clinical and administrative issues, making sure the [MFLCs] are **operating within the parameters of the program** and providing quality services to military members and families.  All [MFLCs] are **required to attend the weekly supervision calls** regardless of how long they have been assigned to the location.  [Emphasis added.]

58.     MHN supervisors assign daily tasks and ensure that MFLCs complete them in the approved manner by monitoring them.

59.     Deviation from the assigned method of providing services or failure to follow the instructions of MHN supervisors can result in termination of the MFLC.

60.     MFLCs must adhere to a dress code, which prohibits wearing jeans or tennis shoes, among other things.

61.     According to the MHN Provider Manual, MFLCs "are expected to refrain from engaging in any political discussions with military members and their families or civilian staff either on or off the installation."

62.     The Provider Manual also requires that "untoward events should be immediately reported to the [MFLC's] MHN supervisor.  **DO NOT LEAVE A VOICEMAIL MESSAGE.**"  [Emphasis in original.]  The Manual provides an example of an "untoward event" as:  "When leaving the [MFLC's] office after a consultation, a client slips and falls and is injured."

63.     MHN's control is so pervasive and detailed that it prohibits MFLCs from seeing friends or even family members at duty locations.  In the MHN "Frequently Asked Questions" pamphlet, MHN explains that "[MFLCs] are expected to focus on service delivery during assignment periods; therefore families and friends may not visit."

64.     MHN also requires MFLCs to always be within one hour from the military base at which they are assigned.

65.     In short, even the MFLC's time outside of "normal business hours" is not her own to do with as she chooses.

**F.      MFLCs' Hours**

66.     MHN requires MFLCs to work during normal business hours.  Beyond those hours, MHN often requires MFLCs to work on evenings and weekends, including "on call" time.

67.     Although MHN instructs MFLCs that "[t]he MFLC work week is typically 40 hours," in reality, MFLCs regularly work in excess of 40 hours per workweek.

68.     MHN has a policy and practice of not paying MFLCs for hours over 40 in a week.  Because of their classification as independent contractors, MFLCs are not paid time and a half overtime compensation as required by the FLSA and applicable state law.

- 11 -

1  **II.**     **Misclassification**

2        69.     MHN has misclassified its MFLCs as so-called "independent contractors."

3  However, the MFLCs should have been classified as nonexempt employees, as defined by the

4  FLSA and applicable state law.

5        **A.**     **Independent Contractor Misclassification**

6        70.     MFLCs should have been classified as employees, not independent

7  contractors.

8        71.     **Dependence.**  As a matter of economic reality, the MFLCs are

9  economically dependent on MHN as opposed to being in business for themselves.  MFLCs are

10  prohibited from promoting themselves or their non-MHN businesses while on assignment.

11        72.     **Time period.**  MFLCs are engaged for lengthy periods of time – usually

12  more than a year – under periodic contracts called CTOs.  CTOs typically set forth a period of

13  several months.  CTOs are generally automatically extended unless there is a performance or

14  personnel problem that warrants a change in assignment or termination of the MFLC.  For all

15  practical purposes, MHN renews MFLCs' CTOs so fluidly that there is little disruption, if any, in

16  their employment period with MHN.  This arrangement typically results in a de facto employment

17  period of multiple years for MFLCs.

18        73.     **Control.**  MHN exercises significant control over MFLCs' work through

19  several mechanisms.  MFLCs are taught how to do their job, told how to do their jobs, told when

20  to do their jobs and told where to do their jobs.

21        74.     **Profit / loss.**  MFLCs do not have an opportunity to make a profit or loss in

22  any real sense, like true independent contractors do.  MHN pays the MFLCs by the hour or week,

23  as opposed to by commission or based on productivity.  Furthermore, MHN prohibits MFLCs

24  from engaging in other meaningful work while performing MFLC services.

25        75.     **Employment relationship.**  MHN – and not the MFLCs themselves –

26  negotiates and obtains behavioral health contracts from the U.S. government.  MFLCs are simply

27  the labor used by MHN to meet its contractual obligations with the U.S. government.  MFLCs are

28

1   an integral part of MHN's business.  Without the MFLCs, MHN could not fulfill its contracts

2   with the U.S. government.  In MHN's words, MFLCs are the "face" of the program.

3          76.      **Tools and instrumentalities.**  MHN provides the resources, assets, and

4   parameters that determine how the MFLCs carry out their assignments.  According to the MHN

5   Provider Manual, MHN "provide[s] all written materials such as presentations, power points,

6   handouts, etc."  MFLCs do not bring their own tools to the job in any meaningful way.  The

7   Manual explains that MFLCs "will not be able to use any of their own materials or develop any

8   new materials without approval from the MHN Director of Quality and the military POC.  In fact,

9   "[a]ll promotional materials, such as brochures and business cards, will be provided by the

10  installation.  [MFLCs] who are asked by the military POC to create any type of promotional

11  materials should contact the MHN supervisor."

12         77.      **No subordinates.**  MFLCs do not supervise other individuals.  MFLCs do

13  not hire their own employees to facilitate their assignments.  They are not allowed to subcontract.

14      **B.      Exemption Misclassification**

15         78.      **CTOs.**  MHN's CTOs provide for MFLCs to be paid in one of two ways:

16  on an hourly or salary basis.

17                 a.      **Hourly.**  Where MFLCs' CTOs provide for hourly pay, MHN

18  cannot satisfy the FLSA's or applicable state laws' salary basis test, because they are not paid on

19  a salary basis.  Therefore, those MFLCs cannot be classified as exempt employees.

20                 b.      **Salary.**  Where MFLCs' CTOs provide for salary pay, MHN

21  cannot satisfy the FLSA's or applicable state laws' salary basis test because MHN has a policy

22  and practice of making improper compensation deductions that violate the salary basis test.

23  Specifically, those CTOs provide that when an MFLC "performs less than the full services

24  contracted during a standard workweek for reasons other than a federally recognized holiday,

25  MHN reserves the right to prorate the [MFLCs] payment accordingly."

26         79.      **Nonexempt.**  MFLCs do not fit within any exemption to the FLSA or

27  applicable state law.

28

### III.     Benefits Available To MHN Employees

80.     Because they should properly be considered employees, MFLCs are entitled to the same benefits to which properly classified MHN employees are entitled.

81.     On information and belief, all full-time MHN employees are entitled to the following benefits:  (1) medical, (2) dental, (3) vision, (4) group legal, (5) life, (6) short- and long-term disability, (7) accidental death and dismemberment, (8) paid time off, and (9) 401(k). These benefits were not provided to Plaintiffs or Class members.

### IV.     MHN's Unconscionable Arbitration Clause

82.     As a condition of employment, MHN requires MFLCs to sign a Provider Services Task Order Agreement that includes, in the 20th of 23 paragraphs, a binding arbitration clause.  This Agreement (including the arbitration clause it contains) is presented on a take-it-or-leave-it basis, and cannot be negotiated.

83.     The arbitration clause is both procedurally and substantively unconscionable.

a.     The arbitration clause is procedurally unconscionable because (1) it is a form contract presented on a take-it-or-leave-it basis, (2) the applicable rules were not provided at the time of signature, and (3) the arbitration provision is buried in a longer contract, with no requirement that the MFLC sign it separately.

b.     The arbitration clause is substantively unconscionable because it provides (1) that the statute of limitations is limited to six months, (2) that MHN can select any three arbitrators it wishes, from which the plaintiff selects one, (3) that punitive damages are prohibited, (4) that discovery is limited to one fact witness and one expert witness per party, (4) that substantive cost- and fee-shifting rules under the FLSA, California law, and other laws are changed to MHN's unilateral advantage, (5) that MFLCs must bear unusually high arbitration filing fees, and (7) that independent contractor misclassification claims are completely barred because the arbitrator cannot "refuse to enforce any agreements between the parties [e.g., the independent contractor agreement]."

84.     The arbitration clause is so permeated with unconscionability that severance is inappropriate, and the entire clause must be stricken.

85.     Accordingly, Plaintiffs, on behalf of themselves and all Class members, seek a declaratory judgment from this Court that MHN's mandatory arbitration clause is unconscionable and unenforceable.

## COLLECTIVE ACTION ALLEGATIONS

86.     Plaintiffs bring the First Claim for Relief for violation of the FLSA as a collective action pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the Nationwide FLSA Plaintiffs.

87.     Plaintiffs and Nationwide FLSA Plaintiffs are similarly situated in that they have substantially similar job requirements and pay provisions, and are subject to MHN's common practice, policy, or plan of unlawfully characterizing them as independent contractors and refusing to pay them overtime pay in violation of the FLSA.

88.     The First Claim for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b), since the claims of Plaintiffs are similar to the claims of the Nationwide FLSA Plaintiffs.

89.     The contact information (including names, addresses, phone numbers, e-mail addresses, and other identifying information) of the Nationwide FLSA Plaintiffs are available from MHN's records.  Notice should be provided to the Nationwide FLSA Plaintiffs via first class mail, e-mail, and posting in the offices where they have worked as soon as practicable, to allow the MFLCs to make informed decisions regarding their rights to seek overtime pay and other remedies.

## CALIFORNIA CLASS ACTION ALLEGATIONS

90.     The California Named Plaintiff (Ms. Baldini) brings the Second, Third, Fourth, Fifth, Sixth, and Seventh Claims for Relief for violation of California's wage and hour, unfair competition, and private attorney general laws as a class action, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), on behalf of all California Class members, defined in paragraph    15.

91.     **Numerosity** (Fed. R. Civ. P. 23(a)(1)) – The California Class is so numerous that joinder of all members is impracticable.  The California Named Plaintiff is informed and believes, and on that basis alleges, that during the California Class Period, MHN has employed at least fifty persons who satisfy the definition of the California Class.

92.     **Commonality** (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to members of the California Class, including, but not limited to, the following:

a.     Whether MHN unlawfully classified the California Class members as independent contractors;

b.     Whether the California Class members are nonexempt employees entitled to overtime compensation for overtime hours worked under the overtime pay requirements of California law;

c.     Whether MHN unlawfully failed to pay overtime compensation in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and the California Labor Code and related regulations, Cal. Labor Code §§ 201, 202, 203, 226, 510, 1174, 1174.5, and 1194, Cal. Wage Order No. 4-2001;

d.     Whether MHN's policy and practice of classifying the California Class members as independent contractors exempt from overtime entitlement under California law and MHN's policy and practice of failing to pay overtime to California Class members violate applicable provisions of California law, including applicable statutory and regulatory authority;

e.     Whether MHN unlawfully failed to keep and furnish California Class members with records of hours worked, in violation of Labor Code §§ 226 and 1174;

f.     Whether MHN unlawfully failed to provide California Class members with meal and rest breaks, in violation of Labor Code §§ 226.7 and 512;

g.     Whether MHN's policy and practice of failing to pay its employees all wages due within the time required by law after their employment ended violates California law; and

h.       The proper measure of damages sustained and the proper measure of restitution recoverable by members of the California Class.

93.       **Typicality** (Fed. R. Civ. P. 23(a)(3)) – The California Named Plaintiff's claims are typical of California Class members' claims.  The California Named Plaintiff, like other California Class members, was subjected to MHN's policy and practice of refusing to pay overtime in violation of California law.  The California Named Plaintiff's job duties were typical of those of other California Class members.

94.       **Adequacy** (Fed. R. Civ. P. 23(a)(4)) – The California Named Plaintiff will fairly and adequately represent and protect the interests of the California Class members.

95.       **Adequacy of counsel** (Fed. R. Civ. P. 23(g)) – The California Named Plaintiff has retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.  Plaintiffs' counsel have litigated numerous class actions on behalf of employees asserting overtime misclassification claims under the FLSA, California law, and other law.  Plaintiffs' counsel intend to commit the necessary resources to prosecute this action vigorously for the benefit of all Class members.

96.       **Predominance and superiority** (Fed. R. Civ. P. 23(b)(3)) – Class certification of the Second, Third, Fourth, Fifth, and Sixth Claims for Relief is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the California Class predominate over any questions affecting only individual members of the California Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  MHN's common and uniform policies and practices unlawfully treat California Class members as independent contractors exempt from overtime pay requirements.  The damages suffered by individual California Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about MHN's practices.

97.     **Notice** (Fed. R. Civ. P. 23(c)(2)(B)) – The California Named Plaintiff intends to send notice to all California Class members consistent with the requirements of Fed. R. Civ. P. 23.

**HAWAII CLASS ACTION ALLEGATIONS**

98.     The Hawaii Named Plaintiff (Ms. Paddock) brings the Eighth Claims for Relief for violation of Hawaii's Wage and Hour Law as a class action, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), on behalf of all Hawaii Class members, defined in paragraph 16.

99.     **Numerosity** (Fed. R. Civ. P. 23(a)(1)) – The Hawaii Class is so numerous that joinder of all members is impracticable.  The Hawaii Named Plaintiff is informed and believes, and on that basis alleges, that during the Hawaii Class Period, MHN has employed at least fifty persons who satisfy the definition of the Hawaii Class.

100.     **Commonality** (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to members of the Hawaii Class, including, but not limited to, the following:

a.     Whether MHN unlawfully classified the Hawaii Class members as independent contractors;

b.     Whether the Hawaii Class members are nonexempt employees entitled to overtime compensation for overtime hours worked under the overtime pay requirements of Hawaii law;

c.     Whether MHN unlawfully failed to pay overtime compensation in violation of the Haw. Rev. Stat. § 387-3;

d.     Whether MHN's policy and practice of classifying the Hawaii Class members as independent contractors exempt from overtime entitlement under Hawaii law and MHN's policy and practice of failing to pay overtime to Hawaii Class members violate applicable provisions of Hawaii law, including applicable statutory and regulatory authority;

e.     Whether liquidated damages should be awarded to the Hawaii Class members; and

f.     The proper measure of damages sustained and recoverable by members of the Hawaii Class.

1        101.    **Typicality** (Fed. R. Civ. P. 23(a)(3)) – The Hawaii Named Plaintiff's

2  claims are typical of Hawaii Class members' claims.  The Hawaii Named Plaintiff, like other

3  Hawaii Class members, was subjected to MHN's policy and practice of refusing to pay overtime

4  in violation of Hawaii law.  The Hawaii Named Plaintiff's job duties were typical of those of

5  other Hawaii Class members.

6        102.    **Adequacy** (Fed. R. Civ. P. 23(a)(4)) – The Hawaii Named Plaintiff will

7  fairly and adequately represent and protect the interests of the Hawaii Class members.

8        103.    **Adequacy of counsel** (Fed. R. Civ. P. 23(g)) – The Hawaii Named

9  Plaintiff has retained counsel competent and experienced in complex class actions, the FLSA, and

10  state labor and employment litigation.  Plaintiffs' counsel have litigated numerous class actions

11  on behalf of employees asserting overtime misclassification claims under the FLSA, Hawaii law,

12  and other law.  Plaintiffs' counsel intend to commit the necessary resources to prosecute this

13  action vigorously for the benefit of all Class members.

14        104.    **Predominance and superiority** (Fed. R. Civ. P. 23(b)(3)) – Class

15  certification of the Eighth Claim for Relief is appropriate under Fed. R. Civ. P. 23(b)(3) because

16  questions of law and fact common to the Hawaii Class predominate over any questions affecting

17  only individual members of the Hawaii Class, and because a class action is superior to other

18  available methods for the fair and efficient adjudication of this litigation.  MHN's common and

19  uniform policies and practices unlawfully treat Hawaii Class members as independent contractors

20  exempt from overtime pay requirements.  The damages suffered by individual Hawaii Class

21  members are small compared to the expense and burden of individual prosecution of this

22  litigation.  In addition, class certification is superior because it will obviate the need for unduly

23  duplicative litigation that might result in inconsistent judgments about MHN's practices.

24        105.    **Notice** (Fed. R. Civ. P. 23(c)(2)(B)) – The Hawaii Named Plaintiff intends

25  to send notice to all Hawaii Class members consistent with the requirements of Fed. R. Civ. P. 23.

26                              **<u>KENTUCKY CLASS ACTION ALLEGATIONS</u>**

27        106.    The Kentucky Named Plaintiffs (Ms. Dale and Ms. Paddock) bring the

28  Ninth Claims for Relief for violation of Kentucky's wage and hour laws as a class action,

1    pursuant to Fed. R. Civ. P. 23(a) and (b)(3), on behalf of all Kentucky Class members, defined in

2    paragraph    17.

3         107.    **Numerosity** (Fed. R. Civ. P. 23(a)(1)) – The Kentucky Class is so

4    numerous that joinder of all members is impracticable.  The Kentucky Named Plaintiffs are

5    informed and believe, and on that basis allege, that during the Kentucky Class Period, MHN has

6    employed at least fifty persons who satisfy the definition of the Kentucky Class.

7         108.    **Commonality** (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and

8    fact exist as to members of the Kentucky Class, including, but not limited to, the following:

9              a.    Whether MHN unlawfully classified the Kentucky Class members

10   as independent contractors;

11             b.    Whether the Kentucky Class members are nonexempt employees

12   entitled to overtime compensation for overtime hours worked under the overtime pay

13   requirements of Kentucky law;

14             c.    Whether MHN unlawfully failed to pay overtime compensation in

15   violation of the Kentucky Wage Laws, KRS §§ 337.020, 337.060, & 337.285;

16             d.    Whether MHN's policy and practice of classifying the Kentucky

17   Class members as independent contractors exempt from overtime entitlement under Kentucky law

18   and MHN's policy and practice of failing to pay overtime to Kentucky Class members violate

19   applicable provisions of Kentucky law, including applicable statutory and regulatory authority;

20             e.    Whether MHN failed to provide legally mandated meal and rest

21   breaks to the Kentucky Class members, pursuant to KRS § 337.355 and KRS § 337.365;

22             f.    Whether MHN unlawfully failed to keep and furnish Kentucky

23   Class members with records of hours worked, in violation of the Kentucky Wage Laws, KRS §§

24   337.070 & 337.320;

25             g.    Whether liquidated damages should be awarded to the Kentucky

26   Class members; and

27             h.    The proper measure of damages sustained and recoverable by

28   members of the Kentucky Class.

109.    **Typicality** (Fed. R. Civ. P. 23(a)(3)) – The Kentucky Named Plaintiffs' claims are typical of Kentucky Class members' claims.  The Kentucky Named Plaintiffs, like other Kentucky Class members, were subjected to MHN's policy and practice of refusing to pay overtime in violation of Kentucky law.  The Kentucky Named Plaintiffs' job duties were typical of those of other Kentucky Class members.

110.    **Adequacy** (Fed. R. Civ. P. 23(a)(4)) – The Kentucky Named Plaintiffs will fairly and adequately represent and protect the interests of the Kentucky Class members.

111.    **Adequacy of counsel** (Fed. R. Civ. P. 23(g)) – The Kentucky Named Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.  Plaintiffs' counsel have litigated numerous class actions on behalf of employees asserting overtime misclassification claims under the FLSA, Kentucky law, and other law.  Plaintiffs' counsel intend to commit the necessary resources to prosecute this action vigorously for the benefit of all Class members.

112.    **Predominance and superiority** (Fed. R. Civ. P. 23(b)(3)) – Class certification of the Ninth Claim for Relief is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Kentucky Class predominate over any questions affecting only individual members of the Kentucky Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  MHN's common and uniform policies and practices unlawfully treat Kentucky Class members as independent contractors exempt from overtime pay requirements.  The damages suffered by individual Kentucky Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about MHN's practices.

113.    **Notice** (Fed. R. Civ. P. 23(c)(2)(B)) – The Kentucky Named Plaintiffs intend to send notice to all Kentucky Class members consistent with the requirements of Fed. R. Civ. P. 23.

1

## NEVADA CLASS ACTION ALLEGATIONS

2      114.    The Nevada Named Plaintiff (Mr. Zaborowski) brings the Tenth Claim for

3  Relief for violation of Nevada's wage and hour laws as a class action, pursuant to Fed. R. Civ. P.

4  23(a) and (b)(3), on behalf of all Nevada Class members, defined in paragraph      18.

5      115.    **Numerosity** (Fed. R. Civ. P. 23(a)(1)) – The Nevada Class is so numerous

6  that joinder of all members is impracticable.  The Nevada Named Plaintiff is informed and

7  believes, and on that basis alleges, that during the Nevada Class Period, MHN has employed at

8  least fifty persons who satisfy the definition of the Nevada Class.

9      116.    **Commonality** (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and

10  fact exist as to members of the Nevada Class, including, but not limited to, the following:

11            a.      Whether MHN unlawfully classified the Nevada Class members as

12  independent contractors;

13            b.      Whether the Nevada Class members are nonexempt employees

14  entitled to overtime compensation for overtime hours worked under the overtime pay

15  requirements of Nevada law;

16            c.      Whether MHN unlawfully failed to pay overtime compensation in

17  violation of the Nevada Wage and Hour Law, Nev. Rev. Stat. § 608.018 & 608.260;

18            d.      Whether MHN's policy and practice of classifying the Nevada

19  Class members as independent contractors exempt from overtime entitlement under Nevada law

20  and MHN's policy and practice of failing to pay overtime to Nevada Class members violate

21  applicable provisions of Nevada law, including applicable statutory and regulatory authority;

22            e.      Whether MHN's policy and practice of failing to pay its employees

23  all wages due within the time required by law after their employment ended violates Nevada law;

24  and

25            f.      The proper measure of damages sustained and the proper measure

26  of restitution recoverable by members of the Nevada Class.

27      117.    **Typicality** (Fed. R. Civ. P. 23(a)(3)) – The Nevada Named Plaintiff's

28  claims are typical of Nevada Class members' claims.  The Nevada Named Plaintiff, like other

1    Nevada Class members, was subjected to MHN's policy and practice of refusing to pay overtime

2    in violation of Nevada law.  The Nevada Named Plaintiff's job duties were typical of those of

3    other Nevada Class members.

4            118.    **Adequacy** (Fed. R. Civ. P. 23(a)(4)) – The Nevada Named Plaintiff will

5    fairly and adequately represent and protect the interests of the Nevada Class members.

6            119.    **Adequacy of counsel** (Fed. R. Civ. P. 23(g)) – The Nevada Named

7    Plaintiff has retained counsel competent and experienced in complex class actions, the FLSA, and

8    state labor and employment litigation.  Plaintiffs' counsel have litigated numerous class actions

9    on behalf of employees asserting overtime misclassification claims under the FLSA, Nevada law,

10   and other law.  Plaintiffs' counsel intend to commit the necessary resources to prosecute this

11   action vigorously for the benefit of all Class members.

12           120.    **Predominance and superiority** (Fed. R. Civ. P. 23(b)(3)) – Class

13   certification of the Tenth Claim for Relief is appropriate under Fed. R. Civ. P. 23(b)(3) because

14   questions of law and fact common to the Nevada Class predominate over any questions affecting

15   only individual members of the Nevada Class, and because a class action is superior to other

16   available methods for the fair and efficient adjudication of this litigation.  MHN's common and

17   uniform policies and practices unlawfully treat Nevada Class members as independent contractors

18   exempt from overtime pay requirements.  The damages suffered by individual Nevada Class

19   members are small compared to the expense and burden of individual prosecution of this

20   litigation.  In addition, class certification is superior because it will obviate the need for unduly

21   duplicative litigation that might result in inconsistent judgments about MHN's practices.

22           121.    **Notice** (Fed. R. Civ. P. 23(c)(2)(B)) – The Nevada Named Plaintiff intends

23   to send notice to all Nevada Class members consistent with the requirements of Fed. R. Civ. P.

24   23.

25

26

27

28

**FIRST CLAIM FOR RELIEF**
**(Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*,**
**Brought by Plaintiffs on Behalf of Themselves and the Nationwide FLSA Plaintiffs)**

122.    Plaintiffs, on behalf of themselves and all Nationwide FLSA Plaintiffs, reallege and incorporate by reference paragraphs 1 through 97 as if they were set forth again herein.

123.    At all relevant times, MHN has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, MHN has employed, and continues to employ, "employee[s]," including Plaintiff and the Nationwide FLSA Plaintiffs.  At all relevant times, MHN has had gross operating revenues in excess of $500,000.

124.    Attached hereto as Exhibit B are Plaintiffs' signed Consent to Sue forms, pursuant to section 16(b) of the FLSA, 29 U.S.C. §§ 216(b) and 256.  It is likely that other similarly situated individuals will sign consent forms and join as Plaintiffs in asserting this claim in the future.

125.    The FLSA requires each covered employer, including MHN, to compensate all nonexempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek.

126.    The Nationwide FLSA Plaintiffs are entitled to be paid overtime compensation for all overtime hours worked.

127.    At all relevant times, MHN, pursuant to its policies and practices, failed and refused to pay overtime premiums to the Nationwide FLSA Plaintiffs for their hours worked in excess of forty hours per week.

128.    By failing to compensate Plaintiffs and the Nationwide FLSA Plaintiffs at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, MHN has violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. § 207(a)(1) and § 215(a).

129.    By failing to record, report, and/or preserve records of hours worked by Plaintiffs and the Nationwide FLSA Plaintiffs, MHN has failed to make, keep, and preserve

1   records with respect to each of its employees sufficient to determine their wages, hours, and other

2   conditions and practice of employment, in violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*,

3   including 29 U.S.C. § 211(c) and § 215(a).

4         130.    The foregoing conduct, as alleged, constitutes a willful violation of the

5   FLSA within the meaning of 29 U.S.C. § 255(a).

6         131.    Plaintiffs, on behalf of themselves and the Nationwide FLSA Plaintiffs,

7   seek recovery of attorneys' fees and costs of action to be paid by MHN, as provided by the FLSA,

8   29 U.S.C. § 216(b).

9         132.    Plaintiffs, on behalf of themselves and the Nationwide FLSA Plaintiffs,

10   seek damages in the amount of unpaid overtime compensation, liquidated damages as provided

11   by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court

12   deems just and proper.

13   **SECOND CLAIM FOR RELIEF**
**(Cal. Wage Order No. 4-2001; Cal. Labor Code §§ 510, 1194,**

14   **Brought by the California Named Plaintiff on Behalf of Herself and the California Class)**

15         133.    The California Named Plaintiff, on behalf of herself and all members of the

16   California Class, realleges and incorporates by reference paragraphs 1 through 132 as if they were

17   set forth again herein.

18         134.    California law requires an employer, such as MHN, to pay overtime

19   compensation to all nonexempt employees for all hours worked over forty per week, or over eight

20   per day.

21         135.    The California Named Plaintiff and California Class members are

22   nonexempt employees entitled to be paid overtime compensation for all overtime hours worked.

23         136.    Throughout the California Class Period, and continuing through the

24   present, the California Named Plaintiff and California Class members worked in excess of eight

25   hours in a workday and/or forty hours in a workweek.  Certain California Class members also

26   worked in excess of twelve hours in a workday.

27         137.    During the California Class Period, MHN misclassified the California

28   Named Plaintiff and California Class members as independent contractors, exempt from overtime

1  pay entitlement, and failed and refused to pay them overtime premium pay for their overtime

2  hours worked.

3         138.    As a direct and proximate result of MHN's unlawful conduct, as set forth

4  herein, the California Named Plaintiff and California Class members have sustained damages,

5  including loss of earnings for hours of overtime worked on behalf of MHN in an amount to be

6  established at trial, prejudgment interest, and costs and attorneys' fees, pursuant to statute and

7  other applicable law.

8  **THIRD CLAIM FOR RELIEF**
**(California Wage Payment Provisions, Cal. Labor Code §§ 201, 202, & 203,**
9  **Brought by the California Named Plaintiff on Behalf of Herself and the California Class)**

10         139.    The California Named Plaintiff, on behalf of herself and the California

11  Class members, realleges and incorporates by reference paragraphs 1 through 138 as if they were

12  set forth again herein.

13         140.    California Labor Code sections 201 and 202 require MHN to pay its

14  employees all wages due within the time specified by law.  California Labor Code section 203

15  provides that if an employer willfully fails to timely pay such wages, the employer must continue

16  to pay the subject employees' wages until the back wages are paid in full or an action is

17  commenced, up to a maximum of thirty days of wages.

18         141.    The California Named Plaintiff and all California Class members who

19  ceased employment with MHN are entitled to unpaid compensation, but to date have not received

20  such compensation.

21         142.    More than thirty days have passed since The California Named Plaintiff

22  and certain California Class members left MHN's employ.

23         143.    As a consequence of MHN's willful conduct in not paying compensation

24  for all hours worked, The California Named Plaintiff and California Class members whose

25  employment ended during the class period are entitled to thirty days' wages under Labor Code

26  section 203, together with interest thereon and attorneys' fees and costs.

27

28

**FOURTH CLAIM FOR RELIEF**
**(California Record-Keeping Provisions,**
**Cal. Wage Order No. 4-2001; Cal. Labor Code §§ 226, 1174, & 1174.5,**
**Brought by the California Named Plaintiff on Behalf of Herself and the California Class)**

144.    The California Named Plaintiff, on behalf of herself and all members of the California Class, realleges and incorporates by reference paragraphs 1 through 143 as if they were set forth again herein.

145.    MHN knowingly and intentionally failed to provide timely, accurate, itemized wage statements including, *inter alia*, hours worked, to The California Named Plaintiff and California Class members in accordance with Labor Code section 226(a) and the IWC Wage Orders.  Such failure caused injury to The California Named Plaintiff and California Class members, by, among other things, impeding them from knowing the amount of wages to which they are and were entitled.  At all times relevant herein, MHN has failed to maintain records of hours worked by The California Named Plaintiff and California Class members as required under Labor Code section 1174(d).

146.    The California Named Plaintiff and California Class members are entitled to and seek injunctive relief requiring MHN to comply with Labor Code sections 226(a) and 1174(d), and further seek the amount provided under Labor Code sections 226(e) and 1174.5, including the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurred and one hundred dollars ($100) per employee for each violation in a subsequent pay period.

**FIFTH CLAIM FOR RELIEF**
**(California Meal And Rest Period Provisions,**
**Cal. Wage Order No. 4-2001; Cal. Labor Code §§ 226.7 & 512,**
**Brought by The California Named Plaintiff on Behalf of Herself and the California Class)**

147.    The California Named Plaintiff, on behalf of herself and all members of the California Class, realleges and incorporates by reference paragraphs 1 through 146 as if they were set forth again herein.

148.    The California Named Plaintiff and California Class members regularly work and have worked in excess of five-hour shifts without being afforded at least a half-hour meal break in which they were relieved of all duty and more than ten-hour shifts without being

1  afforded a second half-hour meal break in which they were relieved of all duty, as required by

2  Labor Code sections 226.7 and 512 and Wage Order No. 4-2001, section 11(a).

3         149.    In addition, the California Named Plaintiff and California Class members

4  regularly work and have worked without being afforded at least one ten-minute rest break, in

5  which they were relieved of all duty, per four hours of work performed or major fraction thereof,

6  as required by Labor Code section 226.7 and Wage Order No. 4-2001, section 12.

7         150.    As a result of MHN's failure to afford proper meal periods, it is liable to

8  the California Named Plaintiff and California Class members for one hour of additional pay at the

9  regular rate of compensation for each workday that the proper meal periods were not provided,

10  pursuant to Labor Code section 226.7 and Wage Order No. 4-2001, section 11(b).

11         151.    As a result of MHN's failure to afford proper rest periods, it is liable to the

12  California Named Plaintiff and California Class members for one hour of additional pay at the

13  regular rate of compensation for each workday that the proper rest periods were not provided,

14  pursuant to Labor Code section 226.7 and Wage Order No. 4-2001, section 12(b).

15  **SIXTH CLAIM FOR RELIEF**
**(California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*,**

16  **Brought by The California Named Plaintiff on Behalf of Herself and the California Class)**

17         152.    The California Named Plaintiff, on behalf of herself and all members of the

18  California Class, realleges and incorporates by reference paragraphs 1 through 151 as if they were

19  set forth again herein.

20         153.    The foregoing conduct, as alleged, violates the California Unfair

21  Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*  Section 17200 of the Cal.

22  Bus. & Prof. Code prohibits unfair competition by prohibiting, *inter alia*, any unlawful or unfair

23  business acts or practices.

24         154.    Within the four years before the filing of this action, MHN committed, and

25  continues to commit, acts of unfair competition, as defined by the UCL, by, among other things,

26  engaging in the acts and practices described herein.  MHN's conduct as herein alleged has injured

27  the California Named Plaintiff and California Class members by wrongfully denying them earned

28

1    wages, and therefore was substantially injurious to the California Named Plaintiff and to

2    California Class members.

3          155.    MHN engaged in unfair competition in violation of the UCL by violating,

4    *inter alia*, each of the following laws.  Each of these violations constitutes an independent and

5    separate violation of the UCL:

6                a.    The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*;

7                b.    California Labor Code § 1194;

8                c.    California Labor Code §§ 201, 202, 203, 226, 226.7, and 512;

9                d.    California Labor Code § 1174; and

10               e.    California Labor Code § 510, which provides in relevant part:

11           Any work in excess of eight hours in one workday and any work in excess
             of 40 hours in any one workweek and the first eight hours worked on the
12           seventh day of work in any one workweek shall be compensated at the rate
             of no less than one and one-half times the regular rate of pay for an
13           employee.  Any work in excess of 12 hours in one day shall be
             compensated at the rate of no less than twice the regular rate of pay for an
14           employee.  In addition, any work in excess of eight hours on any seventh
             day of a workweek shall be compensated at the rate of no less than twice
15           the regular rate of pay of an employee.

16         156.    MHN's course of conduct, acts, and practices in violation of the California

17   laws mentioned in the above paragraph constitute a separate and independent violation of the

18   UCL.  MHN's conduct described herein violates the policy or spirit of such laws or otherwise

19   significantly threatens or harms competition.

20         157.    The unlawful and unfair business practices and acts of MHN, described

21   above, have injured California Class members in that they were wrongfully denied the payment of

22   earned overtime wages.

23         158.    The California Named Plaintiff, on behalf of herself and the California

24   Class, seeks restitution in the amount of the respective unpaid wages earned and due at a rate not

25   less than one and one-half times the regular rate of pay for work performed in excess of forty

26   hours in a workweek, or eight hours in a day, and double the regular rate of pay for work

27   performed in excess of twelve hours per day.

28

159.    The California Named Plaintiff, on behalf herself and the California Class members, seeks recovery of attorneys' fees and costs of this action to be paid by MHN, as provided by the UCL and California Labor Code §§ 218, 218.5, and 1194.

**SEVENTH CLAIM FOR RELIEF**
**(California Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698-2699.5,**
**Brought by the California Named Plaintiff**
**on Behalf of Herself and All Aggrieved Employees)**

160.    The California Named Plaintiff, on behalf of herself and all aggrieved employees, as well as on behalf of the general public of California, realleges and incorporates by reference paragraphs 1 through 159 as if they were set forth again herein.

161.    Under the California Private Attorneys General Act ("PAGA") of 2004, Cal. Lab. Code §§ 2698-2699.5, an aggrieved employee, on behalf of herself and other current or former employees as well as the general public, may bring a representative action as a private attorney general to recover penalties for an employer's violations of the California Labor Code and IWC Wage Orders.  These civil penalties are in addition to any other relief available under the California Labor Code, and must be allocated 75% to California's Labor and Workforce Development Agency ("LWDA") and 25% to the aggrieved employee, pursuant to California Labor Code § 2699.

162.    The California Named Plaintiff alleges, on behalf of herself and all aggrieved employees, as well as the general public, that MHN has violated the following provisions of the California Labor Code and the following provisions of the IWC Wage Orders that are actionable through the California Labor Code and PAGA, as previously alleged herein: Cal. Lab. Code §§ 201-03, 218.5, 226, 226.7, 226.8, 510, 512, 1174, 1174.5, and 1194, and IWC Wage Order No. 4-2001.  Each of these violations entitles the California Named Plaintiff, as a private attorney general, to recover the applicable civil penalties on her own behalf, on behalf of all aggrieved employees, and on behalf of the general public.

163.    California Labor Code § 2699(a), which is part of PAGA, provides in pertinent part:

>        Notwithstanding any other provision of law, any provision of this code that
>        provides for a civil penalty to be assessed and collected by the Labor and

1

Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of themselves or herself and other current or former employees pursuant to the procedures specified in § 2699.3.

2

3

4     164.    California Labor Code § 2699(f), which is part of PAGA, provides in

5     pertinent part:

6

For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: . . . (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

7

8

9

10     165.    The California Named Plaintiff is entitled to civil penalties, to be paid by

11     MHN and allocated as PAGA requires, pursuant to California Labor Code § 2699(a) for MHN's

12     violations of the California Labor Code and IWC Wage Orders for which violations a civil

13     penalty is already specifically provided by law.  Furthermore, the California Named Plaintiff is

14     entitled to civil penalties, to be paid by MHN and allocated as PAGA requires, pursuant to

15     California Labor Code § 2699(f) for MHN's violations of the California Labor Code and IWC

16     Wage Orders for which violations a civil penalty is not already specifically provided.

17     166.    On January 30, 2013, the California Named Plaintiff provided written

18     notice by certified mail to the LWDA of the legal claims and theories of this case

19     contemporaneous with the filing of the First Amended Complaint in this action.  The California

20     Named Plaintiff simultaneously provided a copy of that notice by certified mail to MHN.  To the

21     extent necessary, the California Named Plaintiff will amend this complaint to allege that the

22     exhaustion process she has commenced has been completed.

23     167.    Under PAGA, the California Named Plaintiff and the State of California

24     are entitled to recover the maximum civil penalties permitted by law for the violations of the

25     California Labor Code and IWC Wage Order No. 4-2001 that are alleged in this complaint.

26

27

28

1081243.1                                    - 31 -

**EIGHTH CLAIM FOR RELIEF**
**Hawaii Wage and Hour Law, Haw. Rev. Stat. § 387-1 *et seq.*,**
**Brought by the Hawaii Named Plaintiff on Behalf of Herself and the Hawaii Class)**

168.    The Hawaii Named Plaintiff, on behalf of herself and all members of the Hawaii Class, realleges and incorporates by reference paragraphs 1 through 167 as if they were set forth again herein.

169.    The foregoing conduct, as alleged, violates the Hawaii Wage and Hour Law, Haw. Rev. Stat. § 387-1 *et seq.*

170.    At all relevant times, MHN has been, and continues to be, an "employer" within the meaning of Haw. Rev. Stat. § 387-1.  At all relevant times, MHN has employed, and continues to employ, employees, including the Hawaii Named Plaintiff and each of the Hawaii Class members, within the meaning of Haw. Rev. Stat. § 387-1.

171.    Haw. Rev. Stat. § 387-3 requires an employer, such as MHN, to pay overtime compensation to all nonexempt employees.  The Hawaii Named Plaintiff and the Hawaii Class members are not exempt from overtime pay requirements under Hawaii law.

172.    At all relevant times, Hawaii had a policy and practice of willfully failing and refusing to pay overtime pay to the Hawaii Named Plaintiff and the Hawaii Class members for their hours worked in excess of forty (40) hours per week.

173.    The Hawaii Named Plaintiffs, on behalf of themselves and the Hawaii Class members, seek recovery of attorneys' fees and costs of this action to be paid by MHN, as provided by Hawaii law, Haw. Rev. Stat. § 388-11(c) and § 387-12(c).

174.    The Hawaii Named Plaintiffs, on behalf of themselves and the Hawaii Class members, seek damages in the amount of the unpaid wages earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work week, as provided by Haw. Rev. Stat. § 387-3, interest under Haw. Rev. Stat. § 388-10(a) and § 388-11(c), liquidated damages under Haw. Rev. Stat. § 387-12(b) and such other legal and equitable relief from MHN's unlawful and willful conduct as the Court deems just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NINTH CLAIM FOR RELIEF**
**Kentucky Wage and Hour Laws, KRS § 337.010 *et seq.*,**
**Brought by the Kentucky Named Plaintiffs**
**on Behalf of Themselves and the Kentucky Class)**

175.    The Kentucky Named Plaintiffs, on behalf of themselves and all members of the Kentucky Class, realleges and incorporates by reference paragraphs 1 through 167 as if they were set forth again herein.

176.    The foregoing conduct, as alleged, violates the Kentucky Wage and Hour Laws, KRS § 337.010 *et seq.* ("the Kentucky Wage Laws").

177.    At all relevant times, MHN has been, and continues to be, an "employer" within the meaning of KRS § 337.010 and 803 Ky. Admin. Regs. 1:005 § 1(2).  At all relevant times, MHN has employed, and continues to employ, employees, including the Kentucky Named Plaintiff and each of the Kentucky Class members, within the meaning of KRS § 337.010 and 803 Ky. Admin. Regs. 1:005 § 4.

178.    The Kentucky Wage Laws require an employer, such as MHN, to pay overtime compensation to all nonexempt employees.  The Kentucky Named Plaintiffs and the Kentucky Class members are not exempt from overtime pay requirements under Kentucky law.

179.    At all relevant times, Kentucky had a policy and practice of willfully failing and refusing to pay overtime pay to the Kentucky Named Plaintiff and the Kentucky Class members for their hours worked in excess of forty (40) hours per week, in violation of the Kentucky Wage Laws, KRS §§ 337.020, 337.060, & 337.285.

180.    As a result of MHN's failure to pay wages earned and due, and its decision to withhold wages earned and due, to the Kentucky Named Plaintiffs and the Kentucky Class members at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, MHN has violated, and continues to willfully violate, the Kentucky Wage Laws, KRS §§ 337.055, 337.060, & 337.285.

181.    The Kentucky Named Plaintiff and Kentucky Class members regularly work and have worked in excess of five-hour shifts without being afforded at least a half-hour meal break in which they were relieved of all duty, as required by KRS § 337.355.

182.    In addition, the Kentucky Named Plaintiff and Kentucky Class members regularly work and have worked without being afforded at least one ten-minute rest break, in which they were relieved of all duty, per four hours of work performed or major fraction thereof, as required by KRS § 337.365.

183.    As a result of MHN's failure to record, report, credit, and furnish to each of its MFLCs in Kentucky, including the Kentucky Named Plaintiffs and the Kentucky Class members, their respective wage and hour records showing all wages earned and due for all work performed, MHN has failed to make, keep, preserve, and furnish such records in violation of the Kentucky Wage Laws, KRS §§ 337.070 & 337.320.

184.    The Kentucky Named Plaintiffs, on behalf of themselves and the Kentucky Class members, seek recovery of attorneys' fees and costs of this action to be paid by MHN, as provided by Kentucky law, KRS § 337.385(1).

185.    The Kentucky Named Plaintiffs, on behalf of themselves and the Kentucky Class members, seek damages in the amount of the unpaid wages earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work week, liquidated damages under KRS § 337.385(1), punitive damages, and such other legal and equitable relief from MHN's unlawful and willful conduct as the Court deems just and proper.

**TENTH CLAIM FOR RELIEF**
**Nevada Wage and Hour Law, Nev. Rev. Stat. § 608.005 *et seq.* & § 612.005 *et seq.*,**
**Brought by the Nevada Named Plaintiff on Behalf of Himself and the Nevada Class)**

186.    The Nevada Named Plaintiff, on behalf of himself and all members of the Nevada Class, realleges and incorporates by reference paragraphs 1 through 185 as if they were set forth again herein.

187.    The foregoing conduct, as alleged, violates Nevada wage and hour law, Nev. Rev. Stat. § 608.005 *et seq.*, Nev. Rev. Stat. § 612.005 *et seq.*, Nev. Rev. Stat. § 616A.005 *et seq.*, and Nev. Admin. Code § 608.050 *et seq.*

188.    At all relevant times, MHN has been, and continues to be, an "employer" within the meaning of Nev. Rev. Stat. § 608.011.  At all relevant times, MHN has employed, and

1    continues to employ, employees, including the Nevada Named Plaintiff and each of the Nevada

2    Class members, within the meaning of Nev. Rev. Stat. § 612.085, Nev. Admin. Code § 608.155,

3    and Nev. Rev. Stat. Sec. 616A.255.

4            189.    Nev. Rev. Stat. § 608.018 & 608.260 requires an employer, such as MHN,

5    to pay overtime compensation to all nonexempt employees.  The Nevada Named Plaintiff and the

6    Nevada Class members are not exempt from overtime pay requirements under Nevada law.

7            190.    At all relevant times, Nevada had a policy and practice of willfully failing

8    and refusing to pay overtime pay to the Nevada Named Plaintiff and the Nevada Class members

9    for their hours worked in excess of forty (40) hours per week.

10            191.    Nev. Rev. Stat. § 608.050 requires MHN to pay its employees all wages

11    due within the time specified by law.  Nevada law provides that if an employer willfully fails to

12    timely pay such wages, the employer must continue to pay the subject employees' wages until the

13    back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

14            192.    The Nevada Named Plaintiff and all Nevada Class members who ceased

15    employment with MHN are entitled to unpaid compensation, but to date have not received such

16    compensation.  More than thirty days have passed since the Nevada Named Plaintiff and certain

17    of the Nevada Class members left MHN's employ.

18            193.    The Nevada Named Plaintiffs, on behalf of themselves and the Nevada

19    Class members, seek recovery of attorneys' fees and costs of this action to be paid by MHN, as

20    provided by Nevada law, Nev. Rev. Stat. § 608.140.

21            194.    The Nevada Named Plaintiffs, on behalf of themselves and the Nevada

22    Class members, seek damages in the amount of the unpaid wages earned and due at a rate not less

23    than one and one-half times the regular rate of pay for work performed in excess of forty (40)

24    hours in a work week, as provided by Nev. Rev. Stat. § 608.018 & 608.260, and such other legal

25    and equitable relief from MHN's unlawful and willful conduct as the Court deems just and

26    proper.

27

28

**ELEVENTH CLAIM FOR RELIEF**
**(Declaratory Judgment, 28 U.S.C. §§ 2201-2202,**
**Brought by Plaintiffs on Behalf of Themselves and the Class members)**

195.     Plaintiffs, on behalf of themselves and all Class members, reallege and incorporate by reference paragraphs 1 through 194 as if they were set forth again herein.

196.     The arbitration clause is included at the end of a 9-page document called the Provider Services Task Order Agreement.  The clause consists of 18 sentences in a single dense paragraph (the 20th of 23 paragraphs in the Agreement), spanning pages 7-8.  A true and correct copy of the Agreement is attached hereto as Exhibit A.

197.     The arbitration clause seeks to strip Plaintiffs and all other MFLCs of federal and state statutory rights.

198.     Plaintiffs seek declaratory judgment to avoid uncertainty, risk of damages, chilling effect, waiver of rights and other negative consequences caused by MHN's arbitration clause.  Declaratory judgment will serve a useful purpose in clarifying the parties' legal relations.

199.     Absent the requested declaratory judgment, Plaintiffs and other MFLCs will suffer irreparable harm.

200.     The issue of enforceability of MHN's mandatory arbitration clause is subject to declaratory judgment.  *See Alders v. A.F.A. Corp.,* 353 F. Supp. 654, 657 (S.D. Fla. 1973)*, aff'd without op.,* 490 F.2d 990 (5th Cir. 1974) (declaratory relief appropriate in determining the validity of a contract); *Central Hudson Gas. & Elec. Corp. v. Banjamin F. Shaw Co.*, 465 F. Supp. 331, 333 (S.D.N.Y. 1978) (declaratory relief appropriate to determine enforceability of binding arbitration provision).

201.     Plaintiffs seek a declaratory judgment that MHN's mandatory arbitration clause is unconscionable and unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all Class members nationwide, pray for relief as follows:

A.     Declaratory judgment that MHN's arbitration clause is unenforceable.

1    WHEREFORE, Plaintiffs, on behalf of themselves and all members of the

2 Nationwide FLSA Class, pray for relief as follows:

3    B.    Designation of this action as a collective action on behalf of the

4 Nationwide FLSA Plaintiffs (asserting FLSA claims) and prompt issuance of notice pursuant to

5 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Opt-In Class, apprising them of

6 the pendency of this action, and permitting them to assert timely FLSA claims in this action by

7 filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

8    C.    Designation of Plaintiffs as Representatives of the Nationwide FLSA

9 Plaintiffs;

10    D.    A declaratory judgment that the practices complained of herein are

11 unlawful under the FLSA;

12    E.    An award of damages, according to proof, including liquidated damages, to

13 be paid by MHN;

14    F.    Costs of action incurred herein, including expert fees;

15    G.    Attorneys' fees, including fees pursuant to 29 U.S.C. § 216;

16    H.    Post-judgment interest, as provided by law; and

17    I.    Such other legal equitable relief as this Court deems necessary, just, and

18 proper.

19    WHEREFORE, each State Law Class Named Plaintiff, on behalf of him- or

20 herself and all State Law Class members he or she represents, prays for relief as follows:

21    J.    Certification of this action as a class action on behalf of each State Law

22 Class;

23    K.    Designation of each State Law Class Named Plaintiff as Representative of

24 the Class he or she seeks to represent;

25    L.    Designation of Plaintiffs' counsel of record as Class Counsel for each State

26 Law Class;

27    M.    A declaratory judgment that the practices complained of herein are

28 unlawful under applicable state law;

1         N.      Appropriate injunctive and equitable relief, including an order enjoining

2    MHN from continuing its unlawful practices;

3         O.      Appropriate statutory penalties;

4         P.      Appropriate civil penalties;

5         Q.      An award of damages, liquidated damages, and restitution to be paid by

6    MHN according to proof;

7         R.      Pre-judgment and post-judgment interest, as provided by law;

8         S.      Such other injunctive and equitable relief as the Court may deem just and

9    proper; and

10        T.      Attorneys' fees and costs of suit, including expert fees and costs.

11                            Respectfully submitted,

12

13   Dated:  February 8, 2013             By:    _/s/ Allen Vaught_____
                                           Allen Vaught

14                            Allen Vaught (admitted *pro hac vice*)

15                            BARON & BUDD, P.C.
                         3102 Oak Lawn Avenue, Suite 1100

16                            Dallas, TX 75219
                         Telephone:  (214) 521-3605

17                            Facsimile:   (214) 520-1181
                         E-Mail: avaught@baronbudd.com

18                            Kelly M. Dermody (Cal. Bar No. 171716)

19                            Jahan C. Sagafi (Cal. Bar No. 224887)
                         LIEFF, CABRASER, HEIMANN &

20                               BERNSTEIN, LLP
                         275 Battery Street, 29th Floor

21                            San Francisco, CA 94111-3339
                         Telephone:  (415) 956-1000

22                            Facsimile:   (415) 956-1008
                         E-Mail: kdermody@lchb.com

23                            E-Mail: jsagafi@lchb.com

24                            *Attorneys for Plaintiffs and proposed Class members*

25

26

27

28

1

## <u>DEMAND FOR JURY TRIAL</u>

2          Plaintiffs hereby demand a jury trial on all causes of action and claims with respect

3   to which they have a right to jury trial.

4

5                                              Respectfully submitted,

6   Dated:  February 8, 2013              By:   <u>/s/ Allen Vaught</u>
                                                     Allen Vaught
7

8                                         Allen Vaught (admitted *pro hac vice*)
                                          BARON & BUDD, P.C.
9                                         3102 Oak Lawn Avenue, Suite 1100
                                          Dallas, TX 75219
10                                         Telephone:  (214) 521-3605
                                          Facsimile:  (214) 520-1181
11                                         E-Mail: avaught@baronbudd.com

12                                         Kelly M. Dermody (Cal. Bar No. 171716)
                                          Jahan C. Sagafi (Cal. Bar No. 224887)
13                                         LIEFF, CABRASER, HEIMANN &
                                             BERNSTEIN, LLP
14                                         275 Battery Street, 29th Floor
                                          San Francisco, CA 94111-3339
15                                         Telephone:  (415) 956-1000
                                          Facsimile:   (415) 956-1008
16                                         E-Mail: kdermody@lchb.com
                                          E-Mail: jsagafi@lchb.com

17                                         *Attorneys for Plaintiffs and proposed Class
                                          members*
18

19

20

21

22

23

24

25

26

27

28